RECORD NUMBER: 16-4710

# United States Court of Appeals

### *for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

MARK ANTHONY JAMES, a/k/a Shoffer, a/k/a Shoff Dog,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT COLUMBIA

# OPENING BRIEF OF APPELLANT

JAMES A. BROWN, JR.
LAW OFFICES OF JIM
BROWN, PA
P.O. Box 592
Beaufort, SC 29901
(843) 470-0003
jimbrownlaw@hargray.com

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

Jurisdiction ................................................................................................ 1

Statement of the Issues on Appeal ............................................................ 1

Statement of the Case ................................................................................ 1

Statement of Facts ..................................................................................... 4

Summary of Arguments ............................................................................. 6

Arguments .................................................................................................. 7

    Issue One ............................................................................................. 7

    Standard of Review ............................................................................. 7

    Argument ............................................................................................. 7

    Issue Two ........................................................................................... 16

    Standard of Review ........................................................................... 16

    Argument ........................................................................................... 17

Conclusion ............................................................................................... 25

Statement Regarding Oral Argument ...................................................... 26

Summary of Intercepted Communications .............................................. 27

# TABLE OF AUTHORITIES

## Cases

US v Giordano, 469 F2d 522 (4th Cir. 1972) ................................................... 8, 10, 11

US v Kahn, 415 US 143 (1974) ..................................................................... 11

US v Keita, 742 F3d 184 (4th Cir. 2014) .................................................... 16

US v Reed, 575 F3d 900 (9th Cir. 2009) ................................................. 9, 11

US v. Smith, 31 F3d 1294 (4th Cir 1994) .......................................... 10, 11

US v Wilson, 484 F3d 267 (4th Cir. 2007) ....................................... 7, 9, 10

## Rules and Statutes

18 USC § 2 ........................................................................................... 1

18 USC § 2518 ..................................................................................... 8

18 USC § 2518(1)( c) ..................................................................... 8, 10

18 USC § 2518(3)( c) .................................................................. 8, 9, 10

18 USC § 2518(10)(a) ......................................................................... 8

18 USC § 2518 (11) ............................................................................. 8

18 USC § 2515 ..................................................................................... 9

18 USC § 3742 ..................................................................................... 1

21 USC 841 ....................................................................................... 10

21 USC § 841 ....................................................................................... 1

21 USC § 846 .................................................................................................. 1

 21 USC § 851 ................................................................................................. 2

28 USC § 1291 ............................................................................................... 1

FRE 402 ........................................................................................................ 17

FRE 404 ........................................................................................................ 17

FRE 404(a) .................................................................................................... 17

FRE 404(a)(2)( c) ........................................................................................... 18

FRE 404(b) .................................................................................................... 21

FRE 404(b)(1) ............................................................................................... 17

FRE 404(b)(2) ......................................................................................... 17, 18

FRE 405 ........................................................................................................ 18

FRE 405(b) .................................................................................................... 18

 FRE 607 ....................................................................................................... 18

FRE 608 ........................................................................................................ 18

FRE 609 ........................................................................................................ 18

FRE 608(a) .................................................................................................... 19

FRE 608(b) .................................................................................................... 19

## JURISDICTION

This appeal is from the final judgment in a criminal case filed on October 28, 2016.  Jurisdiction in the district court was based upon 18 USC § 2 as well as 21 USC §§ 841 & 846.  Appellate jurisdiction is based on 18 USC § 3742 and 28 USC § 1291.

## STATEMENT OF THE ISSUES ON APPEAL

I.      Did the district court err by admitting recorded communications of the Appellant obtained in violation of Title III?

II.     Did the district court commit plain error by admitting evidence of the government's cooperating witnesses' prior criminal activity unrelated to the allegations against the Appellant?

## STATEMENT OF THE CASE

On July 23, 2015, the Appellant was arrested and charged with one count of conspiracy related to drug activity pursuant to 21 USC §§ 841 & 846.  JA, p. 6, DE 725.  This charge was contained in a superceding indictment accusing 32 people of involvement in this conspiracy.  JA, p. 22-36.  This indictment alleged the object of the conspiracy was the possession with intent to distribute and actual distribution of cocaine and cocaine base.  JA, p. 25.

The indictment alleged that the Appellant was criminally liable for a

1

conspiracy related to 5 kilograms or more of powder cocaine and 28 grams or more of cocaine base.  JA, p. 27.  The government also filed a notice to enhance the Appellant's charge by use of a prior felony drug conviction pursuant to 21 USC § 851.  JA, p. 5, DE 317.  The Appellant was appointed counsel at the initial arraignment[1].

Several pre-trial hearings were held.  JA, p. 37- p. 50; p. 59- p. 70; & p. 166- p. 203.  These hearings concerned efforts to challenge the wiretap orders, various searches by witnesses and disagreements between the Appellant and trial counsel.

Eventually, the Appellant and one co-defendant were tried before a judge and a jury in Columbia, SC.  This trial began with jury selection on May 3, 2016.  JA, p. 14, DE 1169.  Testimony was received on May 3-May 5, 2016.  JA, p. 15, DE 1172, 1175, & 1176.

The jury returned a verdict of guilty as to the one count on May 6, 2016.  JA, p. 651- p. 653.  The verdict indicates the object of the entire conspiracy involved 5 kilograms or more of cocaine and 280 grams or more of cocaine base.  The verdict indicates the Appellant is responsible for 5 kilograms or more of

---

[1]Trial counsel was relieved following the filing of the Notice of Appeal and undersigned counsel was appointed for purposes of the direct appeal.

2

cocaine and a measurable quantity of cocaine base.

As a result of the jury's findings regarding the type and amount of drugs and considering the Appellant's prior felony drug conviction, the statutory range of permissible punishment was 20 years to life.

The district court met twice for sentencing purposes.   The first attempted hearing ended with the court extending time for the Appellant to review the Pre-Sentence Report (PSR).  JA, p. 19, DE 1468.  Following a review of the PSR, the Appellant raised several objections.  JA, p. 1340- p. 1343.

The Appellant objected to the PSR's calculation of the drug weight, the inclusion of a summary court conviction, and a firearm enhancement.

The district court overruled these objections.  JA, p. 717, l. 17-21.  The district court calculated the offense level as a level 38.  JA, p. 717, l. 24-25.  The subsequent guideline range produced factoring a criminal history category II was 262-327 months.  JA, p. 718, l. 1-2.

The court imposed a sentence of 270 months on October 27, 2016 and this judgment was filed on October 28, 2016.  JA, p. 732, l. 1-8 & JA, p. 738- p. 742.  A Notice of Appeal was filed by the Appellant on October 28, 2016.  JA, p. 743.  Undersigned counsel was appointed to represent the Appellant on October 31, 2016 and this brief follows.  JA, p. 21, DE 1583.

## STATEMENT OF FACTS

According to the evidence presented by the government at trial, the Appellant and others were involved in a conspiracy to distribute cocaine and cocaine base between July 2013 and April 21, 2015 in the general area between Orangeburg and Columbia, South Carolina.  JA, p. 22- 36.  During the trial, the government presented evidence of wiretaps and searches through the testimony of two agents with the Federal Bureau of Investigation.  The government also presented the testimony of seven cooperating witnesses including several named coconspirators of the Appellant.

These witnesses testified that the Appellant served several positions within the conspiracy.  These roles including such activities as delivering cocaine and receiving money at the direction of others, locating cocaine from other sources, "middle manning" drug deals, and storing cocaine at a barn in Orangeburg County, South Carolina.

More specifically, Lamario Wright testified that the Appellant would store Wright's drugs at the Appellant's home.  JA, p. 301, l. 3-24.  Wright also testified that the Appellant would drive him around to sell drugs or deliver drugs for him.  JA, p. 309, l. 11- 23.  Wright indicated that the Appellant would sometimes assist in pressing cocaine back after it had been cut with another substance.  JA, p. 310,

4

l. 22- p. 311, l. 25.

Mr. Wright also identified several recorded communications between himself and the Appellant.  JA, p. 321-341[2].  According to Wright, these calls discussed drugs using code such as the word "motor" to refer to kilos of cocaine. JA, p. 323, l. 23- p. 324, l. 8.  Wright concluded by testifying that the Appellant helped him store approximately 50 kilograms of cocaine and that the Appellant was provided 15-20 kilograms of cocaine which he distributed on his own.  JA, p. 348, l. 9-15.

Next, Lamont Darby testified regarding his involvement with Mr. Wright, the Appellant and the co-defendant, Charles Cade, who was tried with the Appellant.  Darby primarily testified that the Appellant would sometimes arrive to handle drug deliveries and purchases which had been arranged by Darby with Wright.  JA, p. 379-384.  Darby also testified regarding recorded communications between himself and co-defendant Cade.  JA, p. 409-417.

Then Stephen Graham testified that he would "middle man" drugs for Mr. Wright and that the Appellant would actually provide Graham the drugs at his mother's home.  JA, p. 442-446.  Graham also testified that the Appellant "middle

---

[2]See the Summary of Intercepted Communications, which were introduced at trial, attached as an addendum to this brief.

manned" for him as well.  JA, p. 452, l. 7-21.

Kelvin Johnson testified as to two times that he and the Appellant was involved in the distribution of cocaine.  Johnson also testified to a third incident in which the Appellant was compressing kilos of cocaine.  JA, p. 474-485.

Randy Johnson testified that he would get drugs from dealings with Mr. Wright.  He indicated the drugs would be retrieved at the Appellant's mother's home.  JA, p. 494-500.  Johnson also testified that the Appellant delivered drugs to him in Columbia on a few occasions.  JA, p. 512-515.

Steven Sheard testified as to drug dealing, specifically involving co-defendant Charles Cade.  However, Sheard indicated he did not know the Appellant and had never seen him before.  JA, p. 578, l. 12- 17.

Robert McCastle testified as to his involvement in drug transactions occurring at the barbershop owned by co-defendant Charles Cade.  However, like Sheard, McCastle indicated he did not know the Appellant at all.  JA, p. 623, l. 5-13.

## SUMMARY OF ARGUMENTS

I.    The district court erred by admitting recorded communications of the Appellant obtained in violation of Title III.  The recording of these communications violated Title III because the necessity to engage in this

6

investigative technique had dissipated at the time of the recording of the

Appellant's communications.


II.    The district court committed plain error by admitting evidence of the

government's cooperating witnesses' prior criminal activity unrelated to the

allegations against the Appellant.

## ARGUMENTS

**Issue One**

It was error to admit the recorded communications of the Appellant as these

communications were recorded in violation of the Title III necessity requirement.

To comply with the provisions of Title III, the government must providing a

showing of necessity.  Here, the necessity had dissipated such that showing was

not made and new trial should be granted.

### Standard of Review

An appellate court reviews a necessity determination concerning a Title III

order pursuant to an abuse of discretion standard.  See US v Wilson, 484 F3d 267,

at 280-281(4th Cir. 2007)(internal citations omitted).

### Argument

The district court erred by allowing the admission of the recorded

communications of the Appellant. Even though the district court reviewed the applications the government provided in support of the Title III order, the applications failed to demonstrate that the government's traditional investigative techniques were insufficient. Instead, the government possessed sufficient evidence to prosecute criminal enterprise to which the Title III orders were directed.

As a statutory overlay to the Fourth Amendment, Congress passed Title III to ensure the proper level of privacy protection and the integrity of court proceedings involving the evasive techniques of electronic eavesdropping. US v Giordano, 469 F2d 522, at 523 (4th Cir. 1972). This statutory framework provides uniformity regarding the interception of wire and oral communications. 18 USC § 2510, et seq. A person whose communications are intercepted has standing to challenge a Title III order as an "aggrieved person." 18 USC § 2518(10)(a) & (11).

The government's application must comply with the statutory scheme found at 18 USC § 2518 before the court will approve electronic surveillance. One of the specific factors a court must examine beyond the normal probable cause calculus in a Title III case is that the interception be necessary. 18 USC § 2518(1)( c) & (3)( c). To comply with Title III, the government must act in strict

adherence with the necessity requirement.

When reviewing compliance with the necessity requirement, one factor to consider is whether "normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 USC § 2518(3)( c). However, this necessity requirement is directed to the objective of the investigation as a whole. US v Reed, 575 F3d 900, at 911 (9th Cir. 2009). Pursuant to 18 USC § 2515, strict compliance with the Title III is required and a communication intercepted in violation of this chapter is inadmissible in a trial or legal proceeding.

The federal judiciary in various circuits have addressed "necessity" challenges to evidence seized through Title III wiretaps. Many of these challenges were in the context of drug conspiracies. A common factual scenario in these "necessity" challenges involves a non-identified person being captured through taping of a known target's phone.

In some of these scenarios, an argument was made that the wiretap was not necessary because sufficient cause existed to arrest the named target listed in the Title III application. This was the the scenario presented to the Fourth Circuit case captioned US v Wilson. 484 F3d 267 (4th Cir. 2007). The Wilson court reviewed a necessity challenge to the introduction of recordings produced pursuant to a Title

9

III wiretap.

In <u>Wilson</u>, the appellants were convicted of conspiracy involving 5 or more kilograms of cocaine and 50 grams of cocaine base[3]. On appeal, the appellants in <u>Wilson</u> asserted that the success of traditional investigative techniques negated the need for a wiretap. The Fourth Circuit disagreed in short order by noting that the government: "need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence [such that] wiretapping becomes reasonable." <u>Wilson</u>, at 281 (quoted directly from <u>Wilson</u> with identical omission of citations, quotation marks and alterations).

This portion of the <u>Wilson</u> opinion rests primarily on the analysis found in <u>US v. Smith</u>, 31 F3d 1294 (4th Cir 1994). The <u>Smith</u> opinion provides a framework to review compliance with the necessity requirement. This portion of the <u>Smith</u> opinion references the US Supreme Court's interpretation of the necessity provisions of 18 USC §§ 2518(1)( c) and (3)( c) as a deterrent of both the use of wiretaps as the initial step in an investigation and the use as a replacement for traditional methods of investigation. <u>Smith</u>, at 1297(citing <u>US v</u>

---

[3]This section of law, 21 USC 841, has been amended to modify the threshold drug weight for the upper end of the law concerning cocaine base from "50 or more grams" to "280 or more grams" of cocaine base.

Giordano, 416 US 505, at 515 (1974) and US v Kahn, 415 US 143, at 153, n. 12 (1974).

Smith indicates that an application to record communications must contain more than mere conclusions as to the necessity of this tool. Smith at 1297. However, the application does not have to show that other utilized techniques were entirely unsuccessful or that all other investigative techniques were exhausted. Id, at 1298. Instead, there must be specific facts establishing that "penetrating" a criminal enterprise or gathering evidence about that enterprise has been so difficult as to make the intrusive conduct allowed under Title III appear reasonable. Id.

Authorization is based upon probable cause that the telephone is being used to facilitate the commission of a crime. Kahn, at 157. As such, "the government has no duty to establish probable cause to each interceptee." US v Reed, at 910(internal quotation omitted). Likewise, the necessity requirement applies to the telephone and not the interceptee. Reed, at 911.

Following from this, necessity concerning the investigation of a drug conspiracy must be examined in light of the government's evidence of the scope of the conspiracy under investigation possessed aside from the eavesdropping. Reed, at 911-912.

11

In the case at bar, Appellant's trial counsel preserved this issue for appeal when she joined the other motions filed by co-defendants in this case[4]. JA, p. 172, l. 12- 4. The issue regarding Title III compliance was presented in motions filed by co-defendants Clemmons, Woodward, and Cade. JA, p. 71-84; p. 85-86; & p. 87-98, respectively. The issue of necessity was explicitly referenced in the motions filed by Clemmons and Cade. JA, p. 71-84 & p. 87-98.

The trial court denied Appellant's motion to suppress the wiretaps through an oral ruling. At this pre-trial motion hearing, the court stated: "to the extent you made that motion, I would be constrained to rule the same way, that necessity was shown." JA, p. 202, l. 18-20. In denying the motion to suppress, the court found that the use of the wires were necessary as other efforts had failed and referenced the unsatisfied need to identify participants to justify the continuation of the wire. JA, p. 198, l. 14- p. 199, l. 11.

Turning to the merits of this argument, the Appellant was intercepted during his communications with co-defendant Lamario Wright. As discussed during the testimony of the FBI agent and later introduced through a cooperating witness,

---

[4]The Appellant also filed his own motions to suppress the wiretaps but these motions do not explicitly argue the necessity issue. JA, p. 51 & p. 155-165. Further, after trial, the Appellant filed other similar motions seeking suppression of the evidence obtained by the Title III orders. JA, p. 654-662; p. 664-682; & p. 684-692.

eight phone recordings involved the Appellant and Mr. Wright as well as one text communication. The earliest intercepted conversation occurred on September 3, 2013 and the last occurred on November 3, 2013.[5]

Seven of the eight intercepted conversations presented at trial occurred following the October 11, 2013 Title III order listed in case number 3:13-mc-00239-JFA as Docket Entry 64[6]. However, the issuance of this Order was not necessary as probable cause existed to arrest the target, Lamario Wright, at this time. Wright's phone was the target of the October 11, 2013 order and not the Appellant's.

It appears the government had sufficient cause to arrest Mr. Wright at least by August 30, 2013. According to the affidavit of August 30, 2013, the government knew that Wright was partners with Robert Joe Jamison in the drug dealing business. JA, p. 1064-1065. The government knew that Wright and Jamison bought multiple kilograms of cocaine from various sources and that Wright sold cocaine, cocaine base, and "Molly" (MDMA). JA, p. 1064-1065 &

---

[5]The affidavits and orders included in this Joint Appendix at pages 744-1316 are documents sealed under case captioned as Sealed Party v Sealed Party. 3:13-mc-00239-JFA, DE 8, 18, 23, & 44.

[6]See the Summary of Intercepted Communications, which were introduced at trial, attached as an addendum to this brief.

13

1069-1070. The government also knew that Wright supplied Devin Orlando Dennis with cocaine and cocaine base. JA, p. 1069. Wright, Jamison, and Dennis were all charged with conspiracy pursuant to a separate indictment and not in the indictment under which the defendant was charged. JA, p. 22-36 & p. 1320.

This affidavit indicates the government knew where Wright lived and the vehicles he drove. The government knew by this date that Wright used an apartment in Columbia to conduct drug business. JA, p. 1093-1094. The government conducted physical surveillance of Wright indicating knowledge of his physical likeness.

Even though the government only knew Wright by the nickname KB or UM 8535 as of the August 30, 2013 affidavit, by the time of October 11, 2013 affidavit, the government knew Wright as Mickelton Alganon Gadson. JA, p. 1064-1065 & p. 1237-1239. To the extent that a person's "legal" name is a significant piece of evidence, it appears that the government truly believe this to be Wright's name as it appeared on a "South Carolina driver's license" presented to a hotel desk clerk who was interviewed by law enforcement. However, for the question of necessity, the existence of probable cause is not affected by the lack of a "legal" name.

The October 11, 2013 affidavit also demonstrates the government knew the

14

actual names of five of the seven co-defendants indicted with Wright.  JA, p.

1233-1242.  The government also knew the residence of one of the two other

unnamed co-defendants charged with Wright.   Also demonstrated in this affidavit

is the fact Wright and these others were dealing as much as 7 kilograms a week.

Thus, the government's efforts up to October 11, 2013 produced an

incredible amount of cause to charge Wright without the necessity of intercepting

more communications.  Because necessity was lacking, the interceptions violated

Title III.  As seven of the eight calls and the single text message introduced

against the Appellant were obtained pursuant to the order issued following this

affidavit, these items should have been excluded from the Appellant's trial.

Because these calls were used to corroborate the testimony of government

witness Wright, the prejudice from the admission of these calls is apparent.

Wright testified to more drug activity with the Appellant than any other witness.

His testimony as to the drug weight was the only weight attributed to the

Appellant in the Pre-sentence report to avoid double counting.

Thus, the district court erred by admitting the intercepted communications

involving the Appellant and this Court should reverse the Appellant's conviction

and remand the matter for a new trial.

15

**Issue Two**

The district court committed plain error by admitting evidence of the government's cooperating witnesses' prior criminal activity unrelated to the allegations against the Appellant. This evidence was not relevant to the allegations contained in the indictment and, instead, constituted character evidence which should have been excluded from consideration by the jury. This error is plain on the face of the record, impacts a substantial right of the Appellant and fairness requires that the Court reversed the conviction and remand the matter for a new trial.

<u>Standard of Review</u>

While a district court's evidentiary rulings are normally reviewed under an abuse of discretion standard, in the absence of an objection, a reviewing court must review pursuant to the plain error rule. To prevail under the plain error standard, the defendant must show there was an error, the error was plain, and error affected [the defendant's] substantial rights.

The correction of plain error lies within our discretion, which we may exercise if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings, or the defendant [is] actually innocent." <u>US v Keita</u>, 742 F3d 184, at 189 (4th Cir. 2014).

16

Argument

The district court erroneously admitted evidence of unrelated past drug dealing conducted by various cooperating witnesses. Even though this evidence was admitted without objection, the error in the admission of this evidence is plain on the face of the record. Because of the impact of this admission upon the rights of the Appellant, a new trial should be granted.

To begin, relevant evidence is generally admissible during a court proceeding. See FRE Rule 402. In contrast, "[i]rrelevant evidence is not admissible." Id. Further, the evidence rules place other limitations on the admission of character evidence even if this evidence is otherwise relevant. See FRE Rule 404.

Under Rule 404, the general rule is that "[e]vidence of a person's character or trait of character is not admissible to prove" that a "person acted in accordance with the character or trait." FRE Rule 404(a).

More specifically to the issue in the case *sub judice*, "[e]vidence of a crime, wrong, or other act is not admissible to prove that a person acted in conformity with this character on a particular occasion. FRE Rule 404(b)(1). This provision does provide exceptions if the admission of the evidence is sought for other purposes. FRE Rule 404(b)(2). However, the government must provide advance

17

notice of the general nature of this evidence and must do so before or during trial if requested by the defense.  FRE Rule 404(b)(2).

The evidence rules also provide for the methods in which a party may prove character evidence.   See FRE Rule 405.  If the proffered evidence involves character or a trait of character and this evidence is deemed admissible, then the party seeking introduction may do so through testimony concerning the person's reputation or through opinion.  Specific instances of character may be introduced but only if the character or character trait "...is an essential element of a charge, claim or defense..."  FRE Rule 405(b).

Alternative means to admit character evidence of a witness may be provided by FRE Rules 607, 608 and 609.  FRE Rule 404(a)(2)( c).

Article VI of the Federal Rules of Evidence addresses witnesses.  Rule 607 allows for any party to attack a witnesses credibility.  FRE Rule 607.  The admission of character evidence concerning the truthfulness or untruthfulness is addressed in Rule 608 and Rule 609 addresses impeachment through use of evidence of a criminal conviction.

Pursuant to Rule 607, any party may impeach a witness' credibility, even if this party called the witness to the stand.

Further, opinion or reputation evidence concerning a witness' truthfulness is

admissible to attack or support the witness' credibility. FRE Rule 608(a). However, evidence supporting the credibility of the witness is not admissible unless the witness' character for truthfulness has been called into question first. Further, evidence of specific instances of a witness' conduct is not admissible to attack or support the witness' character for truthfulness.

But evidence of specific instances of a witness' conduct may be allowed on cross examination. FRE Rule 608(b). Use of this evidence of specific conduct may be permitted if the instances are probative of the character for truthfulness. Further, evidence of these specific instances are only admissible if it concerns the witness or another witness who the testifying witness has already testified about.

Analysis

In the trial below, the relevant questions before the jury concerned the existence of a conspiracy to deal drugs as described in the indictment and whether the Appellant became a member of this conspiracy.

The indictment charged a time frame of July, 2013 until April, 2015 and provided a location of the District of South Carolina. JA, p. 22-37. The indictment provided a list of 32 indicted conspirators and also three other persons not indicted but named within the body. The indictment indicated the conspiracy involved cocaine and cocaine base.

19

In the case at bar, the Appellant contested his involvement in the alleged conspiracy.  He did not contest the existence of a conspiracy among others.  As presented through cross examination, several government witnesses did not know anything about the Appellant.

To prove its case, the government presented the testimony of seven co-defendants who testified as part of a plea agreement entered between them and government.  During direct examination, at least four of the seven cooperating witnesses testified as to criminal activity which was not relevant to the charge in the indictment.  Most of this testimony concerned activity which was not the subject of criminal convictions and some of this testimony did not involve any drug activity at all.

The first cooperating witness who testified for the government was Lamario Wright.  JA, p. 272-364.  He generally testified about his background and upbringing, his drug dealing experience, the number of kilos of cocaine transported for him by the Appellant and the number of kilos of cocaine he sold to the Appellant.  However, Wright's testimony concerning his own drug dealing background included evidence which was inadmissible because it was irrelevant to the case at bar and constituted the improper use of character evidence.  JA, p. 281-301.

20

For example, Wright testified that his first kilo level supplier of cocaine was a person named "Bedo." JA, p. 287, l. 4- p. 291, l. 21. Mr. Wright bought large quantities of cocaine from Bedo during a time period spanning approximately 2002 until 2007. JA, p. 291, l. 3-5. Mr. Wright indicated he bought approximately 500 kilos of cocaine from Bedo. JA, p. 291, l. 6-11.

The testimony regarding Bedo was not relevant as defined by FRE Rule 401. It did not concern the same conspiracy, the same time frame, or the same participants alleged in the indictment. This information was not proper impeachment under Rule 609 as Mr. Wright was not convicted for this conduct.

This "Bedo" testimony did not concern truthfulness of Wright or another witness who Wright had testified about in any way. This information was not relevant to any Rule 404(b) type exception. Further, the prosecution did not notice the intended use of this information in response to the Appellant's "Motion for Disclosure of Intent to Use 404(b) Evidence."

In fact, the government clearly introduced this evidence to portray Mr. Wright as an even bigger drug dealer than referenced in the indictment. Mr. Wright affirmed the government's leading question asking if, between 2000 and 2013, "it was fair to say that [Wright] dealt drugs pretty consistently all throughout that period of time." JA, p. 292, l. 12-16. Only after that question did the subject

21

matter turn to the criminal activity alleged in the indictment.  JA, p. 292, l. 17-21.

The next cooperating witness presented against the Appellant was Lamont Darby.  JA, p. 526-586.  Mr. Darby generally testified about his dealings with Lamario Wright.  JA, p. 374, l. 10- p. 376, l. 16.  Darby also testified about his dealings at the barber shop owned by the co-defendant tried together with the Appellant, Charlie Cade, and his dealings with the Appellant.  JA, p. 387-419 (as to Cade) & p. 376-385 (as to the Appellant).

However, inadmissible evidence was also admitted during the direct examination of Darby.  Darby testified that he began selling marijuana around the time he dropped out of school in the 10th grade.  JA, p. 368, l. 15- p. 371, l. 16.  That would have been around the year 2001-2002 as Darby was 30 at the time he testified in May, 2016.  JA, 367, l. 8-9.

Specifically, Darby testified that he was introduced to selling drugs as "family history."  JA, p. 368, l. 21-24.  He continued to indicate that his "grandaddy actually was selling drugs, my mother, my father, so it was like a family history."  JA, p. 369, l. 1-2.  Darby testified that he made his money between the time he dropped out until his arrest "selling marijuana and $400 a week with checks basically."  JA, p. 371, l. 9-16.

Testimony about Darby's selling of marijuana appears 3-4 times over the

22

early pages of the transcript.  However, this testimony was not relevant to the

indictment which did not reference marijuana in any way.  Further, Darby was not

convicted for this activity and this testimony did not concern the truthfulness of a

witness.

The third instance[7] in which improper testimony was elicited from a

cooperating occurred during the direct questioning of Randy Johnson.  Johnson

testified that he dealt marijuana and cocaine between the time he dropped out of

high school in the 1990's until he went to prison for armed robbery in 2002.  JA, p.

491-493.  No evidence ties this testimony to the conspiracy alleged in the

indictment.

Johnson's early drug dealing was not the subject of a criminal conviction

and did not concern truthfulness.  No other proper, non-character related purpose

for this testimony was offered by the government.

Steven Sheard's testimony likewise contained improperly admitted

evidence.  He testified that he joined the Navy after one year of college and was

discharged in less than three years.  JA, p. 532, l. 18- p. 533, l. 14.  Given his age

of 42 at the time of trial, Sheard's military service occurred during the 1990's.

---

[7]Two other witnesses, Stephen Graham and Kelvin Johnson, testified between the presentation of testimony from Mr. Darby and Randy Johnson. Nothing related to this appellate issue is found in this testimony.

23

Sheard testified improperly that he was charged and convicted by the military for selling marijuana to an undercover officer. JA, p. 533, l. 17- p. 534, l. 1 16. Sheard testified that he served a couple of months in the brig as punishment and was then discharged. This situation occurred between 15 and 20 years before he testified at Appellant's trial.

Finally, Robert McCastle provided inadmissible testimony as the final government witness. He was 44 when he testified in the 2016 trial. JA, p. 579, l. 12-13. But McCastle informed the jury about a criminal conviction occurring when he was 18 years old because he "enter[ed] a motor vehicle." JA, p. 584, l. 2-3. He received four years probation which would have ended approximately 20 years before the Appellant's trial. McCastle also testified that he was convicted for possession of powder cocaine in "2002, 2003" for which he received three years probation. JA, p. 584, l. 4-10.

Both Sheard and McCastle's testimony concerned criminal convictions but for conduct not relevant to the indictment. Further, Appellant's trial occurred more than ten years following both the dates of conviction or release from confinement. No notice of intent to use these stale convictions was provided by the government.

The introduction of this improper evidence from these witnesses prejudiced

24

the Appellant. This evidence constitutes evidence of bad character of the witnesses and impugns the Appellant because of his later association with these people. This evidence concerned significant criminal activity.

The testimony from Wright concerned more than 500 kilograms of cocaine from activity not related to this conspiracy. This is more weight than referenced in all of the other testimony concerning the conspiracy charged in the indictment. The reference to other drugs such as marijuana and other crimes such as auto breaking injects other issues into the Appellant's trial.

The repeated instances of testimony outside of rules of evidence affected the Appellant of a fair trial, a substantial right. Because of the diverse nature of the improper criminal conduct discussed and the shear amount of dealing between Wright and "Bedo," this Court must grant relieve to avoid the possibility that the Appellant's conviction resulted from consideration of this inadmissible evidence.

Thus, the Court should recognize the admission of this evidence as plain error affecting substantial rights necessitating the reversal of the conviction and remand for a new trial.

## CONCLUSION

Therefore, the Court should find error as discussed above, reverse the Appellant's conviction and sentence and remand this matter for a new trial.

## STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel takes no position regarding the need for oral argument in this matter.

Respectfully Submitted,

By:   /s/ James A. Brown, Jr.                    April 11, 2017
      James A. Brown, Jr.                        Beaufort, SC

      Law Offices of Jim Brown, P.A.
      1600 Burnside Street, Suite 100
      P.O. Box 592
      Beaufort, SC 29901-0592
      Federal ID Number: 7646
      (843) 470-0003

      Counsel for the Appellant
      Mark Anthony James

26

**Addendum to the Appellant's Brief**
**Summary of Intercepted Communications**
**Involving the Appellant Mark James**

| Exhibit # | Session Number | Date | Time | JA Pages |
|---|---|---|---|---|
| 12 | 1744 | 9.3.13 | 1539 | JA, p. 245-247, & 324 |
| 1 | 521 | 10.13.13 | 1958 | JA, p. 247, & 327 |
| 2 | 940 | 10.15.13 | 0900 (0905) | JA, p. 247-248 JA, p. 250-251, & 330 |
| 3 | 945 | 10.15.13 | 0936 | JA, p. 250-251, & 332 |
| 4 | text | 10.15.13 | 0943 | JA, p. 226-227 JA, p. 248-251 |
| 19 | 4402 | 10.31.13 | 0927 | JA, p. 248, & 336 |
| 7 | 1037 | 10.31.13 | 1444 | JA, p. 248, & 338 |
| 9 | 1496 | 11.3.13 | 2033 | JA, p. 248-249, & 340 |

Exhibit 56 (JA, p. 249) is a disk of calls

Exhibit 71 (JA, p. 245) is a transcript

27

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### Effective 12/01/2016

No. __16-4710__     **Caption:** US v. Mark James _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. _See_ Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____5,542____ [_state number of_] words

[ ] this brief uses monospaced type and contains _____ [_state number of_] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
WordPerfect 12 _____ [_identify word processing program_] in
Times New Roman, 14 point _____ [_identify font size and type style_]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [_identify word processing program_] in
_____ [_identify font size and type style_].

(s) James A. Brown, Jr. _____

Party Name Mark James _____

Dated: 4/11/2017 _____

# CERTIFICATE OF SERVICE

I certify that on <u>4/11/2017</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

JOHN D. ROWELL
OFFICE OF THE U.S. ATTORNEY
1441 Main Street
Suite 500
Columbia, SC 29201
(803) 929-3036
jd.rowell@usdoj.gov

/s/ James A. Brown, Jr.
_____
Signature

4/11/2017
_____
Date